UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GWEN DIANA HEMMELGARN,

      Plaintiff,

v.                                                                    Case No. 8:24-cv-2723-CPT

FRANK BISIGNANO,
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,[1]

      Defendant.

_____/

### **O R D E R**

The Plaintiff seeks judicial review of the Commissioner's decision denying her

application for Disability Insurance Benefits (DIB).  For the reasons discussed below,

the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1972, obtained a college degree, and has past relevant

work experience as a teacher.  (R. 31, 320, 367).  In August 2020, the Plaintiff applied

for DIB, alleging disability as of that month due to diabetes, depression, a right club

---

[1] Mr. Bisignano became the Commissioner of Social Security on May 6, 2025.  Pursuant to Federal
Rule of Civil Procedure 25(d), Mr. Bisignano is substituted for the former Acting Commissioner, Mr.
Leland Dudek, as the Defendant in this suit.

foot, and missing fingers on both hands. *Id.* at 320–23, 366. The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration. *Id.* at 152–61.

At the Plaintiff's request, the ALJ held a hearing on the matter and found that the Plaintiff was not disabled. *Id.* at 64–91, 125–47, 168. The Appeals Council vacated that ruling, however, and remanded the case to the ALJ. *Id.* at 148. The ALJ thereafter held another hearing in August 2023, at which the Plaintiff testified. *Id.* at 37–63.[2]

In a decision issued in November 2023, the ALJ determined that the Plaintiff (1) had not engaged in any substantial gainful activity since her alleged onset date in August 2020; (2) had the severe impairments of obesity, hypertension, hypothyroidism, diabetes mellitus, low back pain, obstructive sleep apnea, and congenital deformities of the right foot and bilateral hands; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings,[3] including—of import here—Listing 1.18; (4) had the residual functional capacity (RFC) to perform sedentary work subject to various limitations; and (5) could engage in her past relevant work as an English teacher as she

---

[2] The Plaintiff testified at the first hearing as well. (R. 64–91).

[3] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA deems considerable enough to prevent a person from performing any gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(iii). When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits. *See* 20 C.F.R. § 404.1520(a)(4)(iii); *see also Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

had actually performed it.  *Id.* at 18–36.  In light of these findings, the ALJ again concluded that the Plaintiff was not disabled.  *Id.* at 31.

The Appeals Council denied the Plaintiff's request for review.  *Id.* at 1–6. Accordingly, the ALJ's decision became the final decision of the Commissioner.  *See Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months."  42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[4]  A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

To ascertain whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process."  *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[5]  Under this process, an ALJ must assess whether the claimant: (1) is engaging in substantial gainful activity; (2) has a severe impairment; (3) has a severe

---

[4] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[5] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

impairment that meets or equals one of the listings; (4) has the RFC to perform her past relevant work; and (5) can take on other jobs in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)). Although the claimant bears the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that she cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision disposing of the claimant's disability application after a hearing. 42 U.S.C. § 405(g). Judicial review is confined to determining whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a

4

conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citations omitted).    In resolving whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or make credibility determinations.   *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)).   Further, while a court will defer to the Commissioner's factual findings, it will not defer to his legal conclusions.   *Viverette*, 13 F.4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

III.

The Plaintiff raises four challenges on appeal: (1) the ALJ's assessment at step four that the Plaintiff did not have any severe mental impairments is fatally flawed given the ALJ's finding at step two that the Plaintiff displayed mild limitations in mental functioning; (2) the ALJ's step three determination that the Plaintiff's right foot impairment did not meet Listing 1.18 is inadequately supported; (3) the ALJ did not correctly evaluate various medical opinions in rendering his RFC finding at step four; and (4) the ALJ improperly "circumvented" the application of the Medical Vocational Guidelines (also known as the grids) at step five in concluding that the Plaintiff was not disabled.[6]   (Docs. 12, 17).   Each of these challenges will be addressed in turn.

---

[6] The Court has reordered the Plaintiff's challenges for purposes of its analysis.

A.

As referenced above, an ALJ must discern at step two whether a claimant has a medically determinable impairment or combination of impairments that is severe. *See McCormick v. Soc. Sec. Admin., Comm'r*, 619 F. App'x 855, 857 (11th Cir. 2015) (per curiam) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)); *see also* 20 C.F.R. § 404.1520(a)(4)(ii). The severity of an impairment is "measured in terms of its effect upon [a claimant's] ability to work, and not simply in terms of [a] deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). An impairment is deemed to be severe only if it significantly limits a claimant's physical or mental capacity to engage in basic work activities. *See* 20 C.F.R. § 404.1522(a); *see also Bridges v. Bowen*, 815 F.2d 622, 625–26 (11th Cir. 1987) (per curiam). A non-severe impairment, on the other hand, is one that does not cause such a restriction. *See* 20 C.F.R. § 404.1522(a). In the end, the bar for showing a severe impairment is a low one, *McCormick*, 619 F. App'x at 857 (citation omitted), and the finding of any severe impairment is enough to satisfy the step two inquiry, *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 891 (11th Cir. 2013) (per curiam) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

Where, as here, a claimant presents a "colorable" claim of a mental impairment, an ALJ must apply the regulatorily-mandated Psychiatric Review Technique (PRT) typically at step two. *See Moore*, 405 F.3d at 1213–14 (citing 20 C.F.R. § 404.1520a). This technique requires an assessment of how a claimant's mental impairment affects four broad functional areas (known as the Paragraph B criteria): (1) understanding,

remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  *See* 20 C.F.R. § 404.1520a(c)(3).

To measure each of these domains, the PRT employs a five-point scale that is comprised of the following categories: None, Mild, Moderate, Marked, and Extreme. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00.  The Regulations define these categories as follows: (1) None—a claimant is able to function in an area "independently, appropriately, effectively, and on a sustained basis;" (2) Mild—a claimant is "slightly limited" in her ability to function in a domain independently, appropriately, effectively, and on a sustained basis; (3) Moderate—a claimant has a "fair" capacity to function in an area independently, appropriately, effectively, and on a sustained basis; (4) Marked—a claimant is "seriously limited" in her ability to function in a domain independently, appropriately, effectively, and on a sustained basis; and (5) Extreme—a claimant cannot function in an area independently, appropriately, effectively, and on a sustained basis.  *See id.* at § 12.00(F)(2)(a)–(e).

If an ALJ determines after applying the PRT that a claimant has none or only mild functional restrictions in the four domains, he will generally conclude that the claimant's mental impairment is not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1).  The Regulations dictate that an ALJ provide a specific explanation for his opinion, including the degree of limitation found in each area.  *Id.* § 404.1520a(c)(4), (e)(4).  An ALJ must then incorporate the results of the

PRT into his findings and conclusions. *See Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (per curiam) (citing *Moore*, 405 F.3d at 1213–14).

The PRT, however, is separate and apart from an ALJ's RFC determination at step four, which mandates that the ALJ gauge a claimant's maximum ability to do work despite her impairments, both severe and non-severe. *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268–69 (11th Cir. 2019) (per curiam) (stating that "[c]onsideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC") (citing *Bowen v. Heckler*, 748 F.2d 629, 634–35 (11th Cir. 1984)). The RFC analysis at step four thus represents a more detailed assessment of a claimant's ability to function than the one performed at step two. *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1325 (11th Cir. 2021) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)); *see also* Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *4 (July 2, 1996) (observing that the criteria used to rate the severity of mental impairments at step two do not equate to an RFC determination, which involves a "more detailed" evaluation that obligates an ALJ to "itemiz[e] various functions contained in the [four] broad" areas). As a result, even when an ALJ finds that a claimant suffers from a non-severe mental impairment at step two, the ALJ's RFC determination at step four must consist of more than an implicit or perfunctory determination that the claimant's affliction "imposed no significant limitations on [her] work-related mental capacities." *Schink*, 935 F.3d at 1269.

In this case, the ALJ noted at step two that the Plaintiff suffered from the medically determinable mental impairments of anxiety disorder and depressive

disorder. (R. 20). The ALJ then applied the PRT and found that the Plaintiff had only mild limitations both in concentrating, persisting, or maintaining pace and in adapting and managing herself and had no restrictions in the other two domains. *Id.* at 21–22. Given these assessments, the ALJ did not deem the Plaintiff's mental impairments to be severe. *Id.* at 23.

In addition, as he was required to do, the ALJ again discussed the evidence concerning the Plaintiff's mental impairments at step four. As relevant here, the ALJ stated:

> I find persuasive the prior administrative findings of the consulting psychologists for the [s]tate [a]gency[, Drs. Mercedes DeCubas and David Tessler,] at the initial and reconsideration levels. These experts found that the [Plaintiff's] anxiety and depression cause[d] no more than mild limitations in the [Plaintiff's] ability to perform work-related activities and [we]re therefore non-severe. These opinions [we]re consistent with the mental status examinations documented in the record, which [we]re generally unremarkable, and show the [Plaintiff's] medications appear[ed] to have her anxiety and depression under good control. Moreover, both [Dr. DeCubas and Dr. Tessler] reached the same conclusion even though they reviewed the evidence separately at different times. The fact that different experts reached the same conclusion independently adds great validity and reliability to those opinions. Furthermore, these opinions are each supported by a detailed written explanation and rationale citing to specific medical facts in the record to buttress the opinion. In sum, these opinions are consistent with the evidence and are well supported.

*Id.* at 30 (internal citations omitted).

The Plaintiff now contends that the ALJ's step two finding that she had mild mental impairments relative to two of the Paragraph B criteria cannot be reconciled

with the ALJ's step four determination that she had no severe mental impairment and that "remand is [thus] needed to resolve this conflict." (Doc. 12 at 16–19). The Plaintiff grounds this argument on the Department of Labor's *Revised Handbook for Analyzing Jobs* (RHAJ). *Id.* "According to its introduction, the RHAJ 'contains the methodology and benchmarks used by the cooperative Federal–State Occupational Analysis Program in gathering and recording information about jobs.'" *Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 610 n.23 (E.D. Tex. 2009). Akin to the PRT's five point scale and as claimed by the Plaintiff, the RHAJ contains five gradations for measuring a claimant's abilities and aptitudes: markedly low (i.e., ten percent or less), lower degree (i.e., eleven percent up to thirty-three percent), medium degree (i.e., thirty-four percent to sixty-five percent), high degree (i.e., sixty-six percent to eighty-nine percent), and extremely high degree (i.e., eighty-nine percent to one hundred percent). (Doc. 12 at 16–19); (Doc. 17 at 4–5). Although not entirely clear, the Plaintiff seemingly asserts that a "mild" limitation in one of the four broad functional areas under the PRT "appears" to correspond to the "lower degree" on the RHAJ scale, meaning that a claimant at such a level would only be able to perform the tasks for that domain eleven percent to thirty-three percent of the time. (Doc. 12 at 18). The Plaintiff maintains that this degree of impairment indicates that all mild limitations will "interfere with work quite significantly." *Id.*

There are at least two problems with the Plaintiff's argument. As initial matter, to the extent the Plaintiff asserts the ALJ erred by not finding her mental impairments to be severe at step two, such an assertion is not a basis for remand. As explained

10

previously, the ALJ determined at step two that the Plaintiff had the severe impairments of obesity, hypertension, hypothyroidism, diabetes mellitus, low back pain, obstructive sleep apnea, and congenital deformities of the right foot and bilateral hands. (R. 18–36).  Any one of these severity findings was sufficient to meet the ALJ's obligations at step two.  *See Packer*, 542 F. App'x at 891 (stating that a finding of any severe impairment is enough to satisfy the step two inquiry) (citing *Jamison*, 814 F.2d at 588); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) (per curiam) ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe.").

The Plaintiff's argument is also lacking insofar as it wholly ignores the fact that a "mild" restriction is clearly defined under the Regulations governing the PRT.  As described above, those Regulations characterize a "mild" restriction as one that "slightly limit[s]" a claimant's capacity to function in a given domain "independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(F)(2)(b); *see also Miller v. King*, 2025 WL 1031988, at *5 (M.D. Fla. Feb. 10, 2025) ("[R]atings of 'mild' at step two do not equate to a finding of severe.") (citing 20 C.F.R. § 404.1520a(d)).  The Plaintiff cannot simply discard this definition in favor of terminology from another source (i.e., the RHAJ), which—as even the Plaintiff acknowledges—has at most only an attenuated connection to the PRT.  This is especially true given that the Commissioner "has not taken administrative notice of the RHAJ" or recognized it as "authoritative."  *Poelker v. Comm'r of Soc. Sec.*, 2023 WL 6940241, at *6 (M.D. Fla. Mar. 10, 2023) (citations omitted).

Not surprisingly given these flaws, at least two courts in this District have rejected a similar, if not identical, contention made by the Plaintiff here. *See Miller*, 2025 WL 1031988, at *4–5 (dismissing as meritless the claimant's argument predicated on the RHAJ that there was a conflict between the ALJ's determination that the claimant had mild limitations in the four areas of broad functioning and the ALJ's finding that the claimant had no severe mental limitations); *Kranz v. Comm'r of Soc. Sec.*, 2022 WL 3867856, at *7 (M.D. Fla. June 22, 2022) (ruling that there was "no basis . . . in the [R]egulations, [the] Social Security rulings, or [the] applicable case law" for the claimant's assertion premised on the RHAJ that his "mild limitation in concentration, persistence, and pace . . . mean[t] he c[ould not] concentrate between 11–33% of the time"), *report and recommendation adopted*, 2022 WL 3867558 (M.D. Fla. Aug. 30, 2022). The Court reaches the same conclusion in this case.

In an attempt to avoid this outcome, the Plaintiff cites *Acre v. Comm'r of Soc. Sec.*, 2024 WL 36061 (11th Cir. Jan. 3, 2024) (per curiam). That case is inapposite. In *Acre*, the ALJ found at step two that the claimant had mild mental impairments but limited his step four analysis entirely to the claimant's physical abilities. *Id*. at *2. The ALJ did not commit such an error here.[7]

---

[7] The Plaintiff posits in passing that the ALJ neglected to address her mild mental limitations in formulating his RFC. (Doc. 12 at 19). Given the perfunctory nature of this claim, the Plaintiff has abandoned or waived it. *See Grant v. Soc. Sec. Admin., Comm'r*, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (concluding that a party abandons a claim when, among other things, she "raises it in a perfunctory manner without supporting arguments and authority") (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014)); *Battle v. Comm'r, Soc. Sec. Admin.*, 787 F. App'x 686, 687 (11th Cir. 2019) (per curiam) ("Issues raised in a perfunctory manner . . . are generally deemed to be waived.") (internal quotation marks and citation omitted). Even were that not the case,

12

B.

The Plaintiff's second challenge—as discussed earlier—is that the ALJ erred in finding that the Plaintiff's congenital right foot impairment did not meet Listing 1.18, which pertains to the abnormality of a major joint in any extremity.  (Doc. 12 at 14–15).  This challenge fails as well.

As alluded to above, a claimant bears the burden of proving that one or more of her afflictions "meet" or "equal" a listed impairment.  *See Bellew v. Acting Comm'r of Soc. Sec.*, 605 F. App'x 917, 920 (11th Cir. 2015) (per curiam) (citing *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991)).  To "meet" a listing, "a claimant must have a diagnosis included in the Listings" and must also supply medical reports showing that her malady fulfills "the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (per curiam) (citing 20 C.F.R. § 404.1525(a)–(d)) (internal quotation marks omitted).  And to "equal" a listing, "the medical findings must be at least equal in severity and duration to the listed findings." *Id.*  Of significance here, an ALJ's determination as to whether a claimant meets a listing may be implied from the record.  *See Davenport v. Astrue*, 403 F. App'x 352, 354 (11th Cir. 2010) (per curiam) (citing *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)).

---

the Plaintiff's argument lacks merit because—as discussed *infra*—the ALJ properly evaluated the Plaintiff's mental impairments in arriving at his RFC determination, and that determination is adequately substantiated by the record.

To fall within the ambit of Listing 1.18, a claimant must satisfy the criteria contained in Paragraphs A, B, C, and D of that listing. *See generally* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.18. The Plaintiff now contends that the ALJ erred because he focused solely on one portion of Paragraph A. (Doc. 12 at 14–15). The Plaintiff, however, overlooks the ALJ's findings which directly implicate Paragraph D and which alone are dispositive of the Plaintiff's challenge.

To fulfill Paragraph D's requirements, a claimant must show an "[i]mpairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least [twelve] months," as well as "medical documentation" demonstrating one of the following elements:

1.   A documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; or

2.   An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or

3.   An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.18(D) (internal citations omitted).

It is evident from the whole of the ALJ's decision that he did not deem the Plaintiff to meet any of the above parameters notwithstanding the congenital deformities in her hands. Relative to Paragraph D(1), the ALJ determined that no

medical provider had found it medically necessary for the Plaintiff to use a walker, a bilateral cane, bilateral crutches, or a wheeled and seated mobility device.  (R. 24). Regarding Paragraphs D(2) and D(3), the ALJ's analysis reflects that he did not believe the Plaintiff satisfied these elements either.  As the ALJ explained in a later part of his decision:

> With respect to . . . [the Plaintiff's] manipulative abilities, . . . *although the objective findings pertaining to the [Plaintiff's] hands do not warrant manipulative limitations*, I have nonetheless factored the [Plaintiff's] hand deformities into her [RFC] because a sedentary [RFC] significantly limits the amount of weight the [Plaintiff] might be required to lift and carry. This is consistent with the record where the [Plaintiff] reported she was able to make sandwiches, use a microwave, clean counters and tables, and dress herself.  She also stated that she goes online and can perform light laundry and light shopping, albeit with some difficulty.  Similarly, at the current hearing[,] the [Plaintiff] conceded she can hold a pen and write with her right, dominant hand although it becomes painful after time.  To this point, hand and finger dexterity were intact during her consultative evaluation and there was no reported pain with range of motion of the hands.  Her grip strength was 5/5 bilaterally and she was able to pick up small objects.  A treating provider likewise noted grossly normal active range of motion in the upper extremities.  *All of this tends to show the [Plaintiff] capable of utilizing her hands and fingers for sedentary work*, with a very restricted lifting an[d] carrying limitation, and with normal and customary breaks that would allow for resting of her hands.

(R. 29) (emphasis added).

A fair reading of this passage is that the ALJ viewed the Plaintiff as being able to use one or both of her upper extremities to independently initiate, sustain, and complete work-related activities involving fine and gross movements, which necessarily disqualified her under Paragraphs D(2) and D(3).  *See* 20 C.F.R. Pt. 404,

Subpt. P, App'x 1, § 1.18(D)(2), D(3) (stating that Paragraphs D(2) and D(3) dictate that a claimant must be incapable of "us[ing] one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements;" or be incapable of "us[ing] *both upper extremities* to the extent that neither c[ould] be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements") (internal citations omitted) (emphasis added). This conclusion, implicit in the ALJ's findings, is supported by substantial evidence, and the Plaintiff does not show otherwise.  The fact that the ALJ did not expressly make this determination during his discussion about Listing 1.18 is immaterial.  *See Davenport*, 403 F. App'x at 354 ("We have held that the ALJ's finding as to whether a claimant meets a listing may be implied from the record.") (citing *Hutchison*, 787 F.2d at 1463); *Flemming v. Comm'r of the Soc. Sec. Admin.*, 635 F. App'x 673, 678 (11th Cir. 2015) (per curiam) (construing the ALJ's decision as sufficiently taking into account the claimant's psychiatric disorder in combination with the claimant's other impairments, and that substantial evidence buttressed "the ALJ's implicit determination that [the claimant] did not meet or equal [a specified listing]"); *Rowland v Colvin*, 2017 WL 945021, at *5 (S.D. Ga. Mar. 10, 2017) (ruling that the ALJ implicitly found that the claimant's migraine headaches did not meet a particular listing where the ALJ evaluated the claimant's headaches as part of her medical history and in assessing her credibility).

16

C.

The Plaintiff's third challenge—as referenced previously—is that the ALJ erred at step four in considering the medical opinions prepared by the state agency consultants and one of the Plaintiff's providers—namely, Dr. DeCubas, Dr. Tessler, Dr. Jolita Burns, Dr. Phillip Matar, and Dr. Carlton Cranford.  (Doc. 12 at 8–14). This challenge is likewise without merit.

As noted above, the ALJ's task at step four is to determine a claimant's RFC and her ability to engage in her past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545.  To do so, the ALJ must decide given all the pertinent evidence before him what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms.  *Id*. at § 404.1545(a).  In making this assessment, an ALJ must examine all medical opinions and prior administrative medical findings in a claimant's case record, together with the other relevant evidence.  *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citations omitted).

A medical opinion is a statement from a physician or other acceptable medical source concerning what a claimant can still do despite her impairments; whether the claimant's capacity to perform various work activities is diminished; and whether the claimant can see, hear, or use her other senses or "adapt to environmental conditions, such as temperature extremes or fumes."  20 C.F.R. § 404.1513(a)(2).  A prior administrative medical finding, on the other hand, is a finding that pertains to "a medical issue made by [the SSA's f]ederal and [s]tate agency medical and

17

psychological consultants at a prior level of review[,]" but that does not constitute an "ultimate determination about whether [the claimant is] disabled[.]"  20 C.F.R. § 404.1513(a)(5).

The Regulations governing the evaluation of medical evidence, including medical opinions and prior administrative medical findings, were amended for disability applications filed on or after March 27, 2017, as this one was.  *See* 20 C.F.R. § 404.1520c; *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 n.4 (11th Cir. 2021), *superseded by regulation on other grounds as stated in Glover v. Comm'r of Soc. Sec. Admin.*, 2022 WL 17826364, at *3 n.2 (11th Cir. Dec. 21, 2022).  The ALJ now determines the persuasiveness of a medical opinion and a prior administrative medical finding instead of generally predicating their weight on the source or consultant who offered the opinion or finding.  *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c.  In conducting this analysis, an ALJ must review the following five factors: (1) supportability; (2) consistency; (3) the source or consultant's relationship with the claimant; (4) the source or consultant's area of specialization; and (5) any other pertinent factors "that tend to support or contradict a medical opinion" or a prior administrative medical finding, such as whether the source or consultant is familiar with the other record evidence or has "an understanding of [the SSA's] disability program's policies and evidentiary requirements."  *Id.* § 404.1520c(c); *see also Nixon v. Kijakazi*, 2021 WL 4146295, at *3 (M.D. Fla. Sept. 13, 2021) (citation omitted).

Of these factors, supportability and consistency are the most important.  *See* 20 C.F.R. § 404.1520c(b)(2); *Nixon*, 2021 WL 4146295, at *3 (citation omitted).

18

Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering his own opinion or finding, while consistency deals with whether a medical source or consultant's opinion or finding comports with other evidence in the record. *See* 20 C.F.R. § 404.1520c(c)(1)–(2); *Vachon v. Comm'r of Soc. Sec.*, 2022 WL 458604, at *4 (M.D. Fla. Feb. 15, 2022); *Barber v. Comm'r of Soc. Sec.*, 2021 WL 3857562, at *3 (M.D. Fla. Aug. 30, 2021) (citation omitted). The amended Regulations require that an ALJ discuss supportability and consistency but do not mandate that he describe how he evaluated the other three factors. *See* 20 C.F.R. § 404.1520c(b)(2); *see also Freyhagen v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citation omitted).  In the end, the amended Regulations—like their predecessors—do not preclude an ALJ from rejecting any medical opinion or prior administrative medical finding if the evidence dictates a contrary assessment. *Freyhagen*, 2019 WL 4686800, at *2 (citing *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam)).

Relevant here, in addition to medical opinions and prior administrative medical findings, there is a separate category of evidence known as "[o]ther medical evidence," which "includ[es] judgments about the nature and severity of [a claimant's] impairments, [a claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3).  An ALJ is not obligated to assess "other medical evidence" for persuasiveness. *Rivera v. Comm'r of Soc. Sec.*, 2021 WL 3602839, at *4 (M.D. Fla. Aug. 13, 2021) (citations omitted).

19

With these principles in mind, the Court proceeds to the substance of the Plaintiff's third claim of error, beginning with the Plaintiff's assertion that the ALJ did not properly consider the opinions of Drs. DeCubas and Tessler. As mentioned above, these two state agency psychological consultants examined the Plaintiff's mental capabilities upon initial review (Dr. DeCubas) and on reconsideration (Dr. Tessler) and separately found that the Plaintiff had mild limitations in the domains of concentration, persistence, and pace and adapting or managing herself. (R. 96, 106, 113, 124). In line with those findings, both Drs. DeCubas and Tessler determined that the Plaintiff's mental condition did "not limit [her] functioning." *Id.* at 97, 114. Independent of these opinions, however, the SSA stated in denial letters it sent to the Plaintiff following initial review and reconsideration that the Plaintiff required a very short on-the-job training period. *Id.* at 106, 124. As explained above, following a subsequent hearing on the matter, the ALJ discerned that the Plaintiff had no more than mild mental limitations, just as Drs. DeCubas and Tessler had determined. *Id.* at 21–23.

The Plaintiff's principal contention regarding the ALJ's evaluation of Drs. DeCubas and Tessler's assessments is that the ALJ did not set forth "with particularity" how he "considered the factors of supportability and consistency" relative to those opinions. (Doc. 12 at 12). In an effort to buttress this argument, the Plaintiff alleges in conclusory fashion that "it was unreasonable [for the ALJ] to conclude that the Plaintiff did not have any limitations in concentration, persistence, and pace[ and in] . . . adapting or managing herself" and that she was not "limited to

20

[specific vocational preparation (SVP)] [one] jobs."[8]   *Id.*   The Plaintiff seems to predicate the latter averment concerning SVP one jobs on the SSA's denial letters, which stated—as described above—that the Plaintiff's condition necessitated only a very short on-the-job training period.   *See* DOT, 1991 WL 688702 (observing that an occupation with an SVP of one needs a "short demonstration only").

The Plaintiff's challenge to the ALJ's assessment of Drs. DeCubas and Tessler's opinions is flawed in at least two respects.   To begin, the Plaintiff's challenge is perfunctory in nature and does not include any meaningful discussion as to why the ALJ's evaluation of Drs. DeCubas and Tessler's opinions was insufficient.   The Plaintiff therefore has waived this argument.   *See Grant*, 2022 WL 3867559, at *2; *Battle*, 787 F. App'x at 687; *Outlaw*, 197 F. App'x at 828 n.3.

Even were that not the case, as recounted earlier, the ALJ reviewed Drs. DeCubas and Tessler's opinions in his decision and deemed them to cohere with the mental status examinations in the record, all of "which [were] generally unremarkable, and all of which "show[ed that] the [Plaintiff's] medications appear[ed] to have her anxiety and depression under good control."   (R. 30).   As reflected above as well, the ALJ also found it notable that Drs. DeCubas and Tessler reached the same conclusion independently and that they each buttressed their assessments with a "detailed written

---

[8] An SVP is based on "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."   DOT, *App'x C Components of the Definition Trailer* § II, 1991 WL 688702 (G.P.O. 4th ed. 1991).   An SVP of one requires a "short demonstration only" and an SVP of two requires "[a]nything beyond [a] short demonstration up to and including [one] month."   *Id.*

21

explanation and rationale citing to specific medical facts in the record." *Id.* In short, the ALJ properly articulated the supportability and consistency of Drs. DeCubas and Tessler's assessments, and substantial evidence bolsters the ALJ's evaluation of those opinions.

As for the Plaintiff's SVP one-related contention, the Plaintiff fails to provide any authority that the SSA's letters were part of Drs. DeCubas and Tessler's opinions. Irrespective of this deficiency, these statements by the SSA ceased to be binding on the agency once the Plaintiff appealed the denials made at the initial and reconsideration stages. *See Mockler v. Comm'r of Soc. Sec.*, 2024 WL 4002990, at *11 (M.D Fla. Aug. 30, 2024) ("Once [the claimant] appealed the agency's initial and reconsideration decisions, th[e] statements [made by the SSA in its denial letters at those stages] were no longer binding on the agency.") (citing 20 C.F.R. §§ 404.905, 404.921, 404.953). It bears highlighting in this regard that, in contrast to the SSA's letters, Drs. DeCubas and Tessler offered assessments—viewed by the ALJ as persuasive—that the Plaintiff's mental condition "d[id] not limit [her] functioning." (R. 97, 114).

The Plaintiff next challenges the ALJ's evaluation of the opinions of Drs. Burns and Matar, both of whom are also state agency physicians. These providers examined the Plaintiff's physical capabilities in connection with a review of her disability application upon initial review (Dr. Burns) and on reconsideration (Dr. Matar). As a result of their respective examinations, Drs. Burns and Matar separately determined that, notwithstanding the Plaintiff's congenital deformity of her right foot, she could stand and/or walk (with normal breaks) for a total of two hours in an eight-hour

workday and could sit (with normal breaks) for a total for six hours in an eight-hour workday. *Id.* at 99, 116.  With respect to the Plaintiff's former occupation as a teacher, Drs. Burns and Matar stated only that "[a] finding about the [Plaintiff's] capacity for [past relevant work] ha[d] not been made." *Id.* at 102, 119.  In his decision, the ALJ found the opinions of both of these medical professionals to be persuasive. *Id.* at 30.

The Plaintiff now argues that the ALJ erred because he purportedly neglected to address statements by Drs. Burns and Matar that the Plaintiff could not engage in her past relevant work.  (Doc. 12 at 13).  The Plaintiff's contention is premised on a misreading of the record.  As explained above, Drs. Burns and Matar did not conclude that the Plaintiff was unable to handle the tasks and responsibilities of her prior teacher position.  (R. 102, 119).  Rather, as described above, they simply stated they did not render a determination on the Plaintiff's ability to perform her past relevant work as a teacher. *Id.*[9]

The Plaintiff alternatively contends—albeit in a cursory manner—that the ALJ failed to state with particularly his consideration of the supportability and consistency factors relative to Drs. Burns and Matar's assessments.  (Doc. 12 at 12–14).  The Plaintiff has waived this contention given the perfunctory fashion in which she raises it. *See Grant*, 2022 WL 3867559, at *2; *Battle*, 787 F. App'x at 687; *Outlaw*, 197 F. App'x at 828 n.3.

---

[9] Even if Drs. Burns and Matar had made such a pronouncement, a statement that a claimant is not capable of performing work she has done in the past is "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(3).  Accordingly, the ALJ would not have been compelled to consider that type of statement in any event.

Even putting aside this issue, the ALJ deemed Drs. Burns and Matar's assessments to be "consistent with the fact that the [Plaintiff] ha[d] performed substantial gainful activity for many years in spite of [her hand and foot] deformities." (R. 30).  The ALJ also found that Drs. Burns and Matar's opinions comported with the objective findings in the Plaintiff's treating source records, almost all of which—the ALJ observed—were "generally unremarkable," except where they "pertain[ed] directly to the [Plaintiff's] hand and foot deformities."  *Id.*  The ALJ further observed, as noted previously, that Drs. Burns and Matar reached the same conclusion on their own, which the ALJ viewed as buttressing the "validity and reliability" of those assessments.  *Id.*  And lastly, as also mentioned above, the ALJ pointed out that Drs. Burns and Matar's opinions were "each supported by a detailed written explanation and rationale citing to specific medical facts in the record to buttress the opinion."  *Id.*  In sum, the ALJ properly articulated the supportability and consistency of Drs. Burns and Matar's assessments, and substantial evidence bolsters the ALJ's evaluation of those opinions.

The Plaintiff next challenges the ALJ's failure to discuss a statement made by the Plaintiff's podiatrist, Dr. Cranford.  (Doc. 12 at 10, 13).  This challenge is similarly unavailing.

As the record evidence reveals, the Plaintiff sought treatment from Dr. Cranford for a diabetic foot examination.  (R. 635, 638).  According to Dr. Cranford's treatment notes, the Plaintiff reported that she was born with defects on her fingers and had only partial portions of her fingers on both hands, which rendered it "very difficult [for her]

24

to use a cane because she d[idn't] have a strong enough grip to hold the cane." *Id.* at 638. Dr. Cranford's treatment notes additionally indicate that the Plaintiff told him she was not able to care for herself and had difficulty walking or climbing stairs, dressing, bathing, and doing errands alone. *Id.* at 636. Following an examination, Dr. Cranford commented that the Plaintiff had "bilateral partially formed fingers from a congenital deformity with hands that d[id] not completely function well[,] making ambulation and activities of daily living extremely difficult." *Id.* at 639. Dr. Cranford also remarked that the Plaintiff's ability to engage in activities of daily living was "very complicated as she [could ]not grasp well with her hands." *Id.* at 642.

The Plaintiff now maintains that the ALJ erred in failing to discuss the supportability and consistency of Dr. Cranford's statement that the Plaintiff could "not grasp well." (Doc. 12 at 10). The problem with this argument is that this observation by Dr. Cranford does not constitute a medical opinion because it is akin to a summary of the Plaintiff's self-reports, as opposed to a determination as to what the Plaintiff "can still do despite [her] impairments" or whether the Plaintiff has any "impairment-related limitations and restrictions" in her "ability to perform physical demands of work activities." 20 C.F.R. § 404.1513(a)(2)(i); *see also Romero v. Comm'r of Soc. Sec.*, 752 F. App'x 906, 908 (11th Cir. 2018) (per curiam) (finding that the medical records at issue did not address a claimant's ability to work because they "mention[ed] only [the claimant's] physical complaints, his medical history, the results of his physical examinations and laboratory tests, and recommendations for and responses to treatment").

25

Rather than constituting a medical opinion, Dr. Cranford's statement about the Plaintiff's ability to grasp instead fits squarely within the category of "other medical evidence." 20 C.F.R. 404.1513(a)(3). As such, the ALJ did not have a duty under the Regulations to evaluate the persuasiveness of that statement. *See Romero*, 752 F. App'x at 908 ("The [ALJ] was not required to state what weight he assigned to medical records that did not qualify as medical opinions."); *Younger v. Acting Comm'r of Soc. Sec. Admin.*, 2022 WL 4377471, at *8 (M.D. Fla. Sept. 22, 2022) (explaining that "notations and clinical findings" set forth by a provider were not medical opinions under the Regulations "because the bulk of [the provider's] report consist[ed] of [the claimant's] subjective symptoms, medical history, physical examination, and the clinical findings based on the physical examination").[10]

## D.

The Plaintiff's final challenge—as described above—is that the ALJ erred in not finding the Plaintiff disabled under the grids. This challenge is without merit as well.

As referenced previously, where an ALJ proceeds to step five, the burden of proof temporarily shifts to the Commissioner "to show that 'there is other work available in significant numbers in the national economy that the claimant is able to perform,'" notwithstanding her impairments. *Sampson*, 694 F. App'x at 734 (quoting *Jones*, 190 F.3d at 1228); *see also* 20 C.F.R. § 404.1560(c). There are "two avenues by

---

[10] For the reasons detailed in the Commissioner's memorandum (Doc. 16 at 18–20) and *infra*, the ALJ otherwise properly substantiated the component of his RFC restricting the Plaintiff to sedentary work with no manipulative limitations.

which an ALJ may determine whether the claimant has the ability to adjust to other work in the national economy"—by application of the grids or through the testimony of a VE. *Phillips*, 357 F.3d at 1239–40.

Promulgated by the Commissioner, the grids establish the types and numbers of occupations that are present in the United States. *Heckler v. Campbell,* 461 U.S. 458, 461 (1983). The grids "consist of a matrix of the four factors identified by Congress" as relevant to the disability determination—namely, "physical ability, age, education, and work experience—and [also] set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Id.* at 461–62 (footnotes omitted). If a claimant's circumstances coincide with the criteria listed in a rule, the grids will provide a determination as to whether the claimant is disabled. *Id.* at 462; 20 C.F.R. § 404.1569.

An ALJ may not rely exclusively on the grids, however, if he finds that the claimant is unable to engage in a full range of work at a given residual functional level or has non-exertional impairments (i.e., restrictions not related to strength) which significantly limit basic work skills. *Phillips*, 357 F.3d at 1243; *Wilson,* 284 F.3d at 1227; *Watson*, 376 F. App'x at 956. Under such a scenario, the ALJ may use the grids as a framework but must additionally consult a VE to decide the positions the claimant may be able to handle. *Phillips*, 357 F.3d at 1242*; Watson*, 376 F. App'x at 958–59.

Implicit in this legal framework is that the grids only apply if an ALJ "determines that a claimant is incapable of performing [her] past relevant work at step four of the evaluation." *Delmonte v. Comm'r, Soc. Sec. Admin.*, 585 F. App'x 774, 776

(11th Cir. 2014) (per curiam) (citation omitted). Absent such a finding, the grids do not come into play at all. *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (per curiam) (finding a claimant's argument that the ALJ should have applied the grids meritless because the grids are only utilized if the claimant is unable to perform her past relevant work) (citation omitted).

In this case, as noted above, the ALJ determined at step four that the Plaintiff had the RFC to engage in sedentary work subject to certain limitations and could return to her past occupation as a teacher as she actually performed it. (R. 24, 30–31). As a result, the ALJ did not need to look to the grids.

The Plaintiff alternatively contends that the ALJ mistakenly found that she could engage in her prior work as a teacher and posits that had the ALJ not made this finding, he would have been obligated to apply the grids, which would have led to a determination that the Plaintiff was disabled. *See* (Doc. 12 at 19–22) (asserting that the ALJ should have deemed the Plaintiff disabled under grid 201.14, which encompasses individuals restricted to sedentary work who are "closely approaching advanced age" and who have skills that are not transferrable) (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 2). The central premise of this contention—that the ALJ erred in determining the Plaintiff could engage in her past relevant work—does not survive scrutiny.

As reflected in the ALJ's decision, the ALJ properly considered the Plaintiff's testimony that she performed her past relevant work at the sedentary level and did not engage in any postural activities except for reaching. (R. 31). In doing so, the ALJ

28

relied on the opinions of Drs. Burns and Matar, who—as explained above—determined that the Plaintiff could meet the requirements of a sedentary position, i.e., stand and/or walk (with normal breaks) for a total of two hours in an eight-hour workday and could sit (with normal breaks) for a total for six hours in an eight-hour workday. *Id.* at 30, 99, 116. The ALJ further observed that while the Plaintiff voluntarily resigned from her position as a teacher, it did "not appear from a clinical, objective standpoint that he[r] condition worsened to such an extent as to prevent even sedentary work[.]" *Id.* at 29.

In an attempt to undermine the ALJ's analysis, the Plaintiff now identifies parts of the record that suggest she was more limited than her past relevant work would allow. (Doc. 12 at 19–22). This line of argument in unavailing.[11] As the Eleventh Circuit has cautioned, "[u]nder a substantial evidence standard of review, [a claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam)). Further, as explained at the outset, the Court cannot decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, even if the Court finds that the evidence preponderates against the Commissioner's determination. *Land v. Comm'r of*

---

[11] The Plaintiff's argument is primarily predicated on Dr. Cranford's statement that the Plaintiff "[could ]not grasp well with her hands" (R. 642) and the Plaintiff's theory that Drs. DeCubas and Tessler restricted the Plaintiff to SVP one jobs, (Doc. 12 at 19–20). For the reasons stated above, this evidence is unpersuasive.

*Soc. Sec.*, 494 F. App'x 47, 50 (11th Cir. 2012) (per curiam) (citation omitted); *Carter*, 726 F. App'x at 739; *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (citation omitted). Rather, the Court's obligation on this appeal is confined to determining whether the ALJ relied on sufficient evidence and applied the correct legal standards. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (observing that courts must defer to the Commissioner's decision if it is supported by substantial evidence and if the Commissioner followed the appropriate legal standards). In the Court's view, the ALJ did so here. As a result, the Plaintiff does not meet her burden of showing that she cannot engage in her past relevant work. *Washington*, 906 F.3d at 1359 ("At step four, the claimant carries a heavy burden of showing that his impairment prevents him from performing his past relevant work.") (citation omitted); *see also Hernandez v. Comm'r of Soc. Sec.*, 433 F. App'x 821, 823 n.1 (11th Cir. 2011) (per curiam) ("[B]ecause substantial evidence supports the ALJ's finding that [the claimant] could perform his past relevant work, [the court] need not reach the issue of whether the ALJ erred by misapplying the [grids.]").

IV.

In light of all the above, it is hereby ORDERED:

1.    The Commissioner's decision is affirmed.

2.    The Clerk of Court is directed to enter Judgment in the Defendant's favor, to terminate any pending motions, and to close the case.

30

SO ORDERED in Tampa, Florida, this 30th day of March 2026.

_____

HONORABLE CHRISTOPHER P. TUITE

United States Magistrate Judge

Copies to:
Counsel of record

31